**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| MICHAEL STEPHEN VAUGHN, ) | Case No. 21-11260-KHK |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER OVERRULING CLAIM OBJECTION

The matter before the Court is the Debtor's Objection to Proof of Claim 14 (Docket No. 34) filed by Daniel and Claire Hassett (together, the "Hassetts") in the amount of $250,000. The Objection argues that the claim should be disallowed because it is based on a default judgment in the amount of $201,919.52, plus interest and costs, entered against Vaughn Home, Inc. ("VHI") as opposed to the Debtor individually. Proof of Claim 14-1. In response, the Hassetts argue, inter alia[1], that the Court should pierce the corporate veil of VHI to hold the Debtor, who is VHI's sole shareholder and director, personally liable for the judgment, including the accrued interest. The Court held an evidentiary hearing on the Objection on June 14, 2024, at the conclusion of which, it took the matter under advisement. For the reasons that follow, the Court will overrule the Objection and Claim 14 will be allowed as filed.

The following constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052 as applied in this contested matter under Rule 9014.

**Facts**

The following facts are not meaningfully in dispute.

A. VHI's Corporate Existence and Formalities

---

[1] The Hassetts also assert that they are owed damages for actual or constructive fraud, conversion, and violations of the Virginia Consumer Protection Act. However, they conceded at the evidentiary hearing that a ruling in favor of veil piercing would moot the assertion of these claims.

Michael Vaughn, the Debtor, is the sole shareholder and director of VHI, a Virginia corporation that was in the business of home renovations.[2] In March of 2019, the Hassetts contracted with VHI to perform construction work on their home.[3] VHI ultimately failed to perform under the Renovation Contract, resulting in the Hassetts filing an arbitration action against VHI, which resulted in an award in the original amount of $201,919.52 plus interest at the rate of 6% running from January 17, 2020.[4] A judgment confirming the arbitration award was entered by the Fairfax County Circuit Court on June 19, 2020.[5] That Judgment is the basis for Claim 14 in this case. While VHI was clearly used by Mr. Vaughn in some capacity to engage in the business of home renovation projects, VHI did not operate according to the typical formalities that a separate corporate entity should observe.

At trial, Mr. Vaughn testified that VHI had no employees, but that he engaged contractors to assist him with his construction projects.[6] He paid these contractors in cash.[7] Vaughn also testified that he had no financial statements, customer contracts or corporate records for VHI.[8] Although he asserts that he kept corporate records at some point, he claimed that they were thrown out in July or August of 2019.[9] When asked if VHI ever held any board meetings, or shareholder meetings, Vaughn responded "[n]o, it was only myself."[10] Mr. Vaughn testified that his accountants prepared VHI's taxes; however, he confirmed that the accountants did not have copies of any corporate records.[11] While Vaughn filed annual reports with the

---

[2] Docket No. 217 - Transcript ("Tr.") 84:18-21.
[3] Exhibit. ("Exh.") 6 ("Renovation Contract"); Tr. 157:22; Tr. 158: 4-11.
[4] Claim 14-3, Part 3 – Ex-Parte Award of Arbitrator, pp. 42-45.
[5] Claim14-3, Part 4 – Order of Default Judgment, pp. 46-47. Although the Court originally excluded the uncertified copy of the judgment that was attached to Claim 14-1 and included in the Hassetts' Exhibits based on the Debtor's authenticity objection, the Debtor's counsel also conceded at the hearing that the Hassetts could amend their Proof of Claim to attach a certified copy of the judgment. On June 26, 2024, the Hassetts filed the certified judgment with the Court.
[6] Tr. 84:22-85:5.
[7] Tr. 85:8-13.
[8] Tr. 99:18-20.
[9] Tr. 100:1-101.
[10] Tr. 122:8-10.
[11] Tr. 122:23-25.

Virginia State Corporation Commission in 2022 and 2024, he testified that he did so on the advice of his former bankruptcy attorney.[12]

VHI corporate tax returns reveal the company had negative "ordinary business income" in 2011, 2014, and 2015.[13] In 2015 alone, VHI had accumulated $38,583 in overdrafts.[14] Although Vaughn claimed that VHI sometimes had, what appeared to be substantial revenue (the business grossed $956,547 in 2011), he also confirmed that overall, the business was still operating at a loss during those years.[15] Mr. Vaughn attested that VHI had significant cash flow issues.[16] Indeed, Exhibit. 39 shows over two hundred bounced checks from VHI's accounts that were issued between December of 2016 and December of 2019.[17] Fifty of those bad checks were issued during the Hassett's renovation.[18] Vaughn also testified that VHI was behind in subcontractor and supplier payments during the time of the Renovation Contract for the Hassetts.[19] He told the Court that he had discussed filing a corporate bankruptcy on behalf of VHI with his accountant but that he did not seriously consider it.[20]

B. The Debtor's Personal Finances and Use of VHI Accounts

Mr. Vaughn's personal tax returns for the years 2016 through 2018 reveal negative taxable income from VHI and his rental property.[21] Between January 2017 and April 2018, $55,000 in checks made payable to Mr. Vaughn were written on VHI accounts.[22] Between June 2018 and January 2019, $15,000 in checks made payable to cash were written on company accounts.[23] When asked what the payments were for, Mr. Vaughn testified that the payments "could have been for multiple things. It could have either

---

[12] Tr. 123:14-23.
[13] Exhs. 29, 30, 31.
[14] Tr. 105:7-11; Exh. 31, p. 4297.
[15] Tr. 153:12-20.
[16] Tr. 119:4-14.
[17] Exh. 39.
[18] *Id*.
[19] Tr. 120:17-121:20.
[20] Tr. 121:21-25.
[21] Exhs. 32, 33 and 34.
[22] Exh. 43.
[23] Exh. 44.

been pay for myself, or it could have been I needed to get cash out in order to pay a contractor."[24] In 2019, Vaughn made cash withdrawals of $42,000 from VHI's accounts, including withdrawals on March 22, 2019 and March 27, 2019 in the amounts of $3,000 and $6,264 respectively, which occurred about a week after the Renovation Contract for the Hassetts was signed.[25] The company bank statements reveal the accounts were constantly being charged fees for overdrafts and returned checks.[26]

VHI accounts were also used to pay Mr. Vaughn's personal mortgage payment to Mr. Cooper, the mortgage lender for his personal residence[27], to BB&T, the first lienholder for a beach house that he owned personally[28] and to Wells Fargo, the second lienholder on the beach house.[29] Vaughn used a VHI account to cut several checks to pay for pool services for the pool at the beach house and for HVAC services for that property.[30] VHI bank statements show the accounts were routinely used to pay for services at a barber shop,[31] and for personal student loan payments to the Department of Education.[32] Further, the statements show the VHI accounts were used to make payments at a gift shop and liquor store[33] and to an attorney who provided services in connection with Vaughn's divorce.[34] VHI accounts were even used to pay for Mr. Vaughn's personal membership at Springfield Golf & Country Club.[35] He testified that the membership was used "for entertainment of clients or people."[36] The accounts also reveal payments to Behavior Therapy Center of Greater Washington,[37] Tommy Bahama, a retail clothier,[38] Sunsplash Tanning Centers Fairfax Station,[39] and Papermoon, a gentlemen's club.[40] In short and without exhaustively citing every instance,

---

[24] Exh. 43; Exh. 44; Tr. 108-2-23.
[25] Exh. 45; Tr. 123:24-125:7.
[26] Exhs. 41 and 45.
[27] Exh. 41, pp. 2281, 2293, 2331, 2347, and Exh. 50; Tr. 109:9-20.
[28] Exh. 51; Tr. 109:22-110:8.
[29] Exh. 52; Tr. 93:3-5.
[30] Exh. 53; Tr. 110:14-25, 111:1-5; Exh. 54; Tr. 111:16-23.
[31] Exh 41 pp.2267, 2273 and 2337; Tr. 128:13-15.
[32] Exh. 41 pp. 2285, 2296, 2321and 2331; Tr. 129:6-8.
[33] Tr. 129:19-130:12.
[34] Tr. 130:16-131:6.
[35] Exh. 60; Tr. 113:15-114:3.
[36] Tr. 114:1-3.
[37] Exh. 41 p. 2337.
[38] Exh. 41 pp. 2334 and 2344.
[39] Exh. 41 p. 2344.
[40] Exh. 41 p. 2345.

the documentary evidence demonstrated that funds in VHI's accounts were used frequently and routinely to pay for Mr. Vaughn's personal expenses.[41]

From June to October 2019, Mr. Vaughn was unemployed. During this period, he survived off financial contributions from family and friends.[42] Rather than put these funds into his personal checking account at Navy Federal Credit Union, Vaughn admitted he deposited the money into VHI's bank accounts at the same institution so that Navy Federal would not be able to confiscate the funds to apply them to Vaughn's defaulted personal loans with the credit union.[43]

C.  VHI's Conduct During Renovation Projects

In 2018, VHI entered into an agreement with Elizabeth Merck, a previous client from a prior project, for a new renovation project on her home that was to start at the beginning of 2019.[44] In October of 2018, months before the project was to begin, Mr. Vaughn asked Ms. Merck to pay him $5,000 to "secure her spot" on his schedule.[45] Ms. Merck paid the $5,000 to Mr. Vaughn via his personal PayPal account. Merck made the following additional payments to VHI: a $7,500 check, another check for $16,400, a check for $7,845.38, and a final check for $3,211.34.[46] Merck testified that the $16,400 payment was extracted from her when Vaughn told her that if she sent him a check for that amount by a date certain, that she could obtain her cabinets on a discount promotion.[47] Notwithstanding these payments, Vaughn testified that no work was ever actually performed on the Merck project.[48] Merck testified that despite representations from Vaughn that cabinets had been ordered, she later discovered that the order was never placed.[49] This testimony was uncontroverted.

---

[41] See Exhs. 41, 45 and 51-54.
[42] Tr. 151:1-18.
[43] Tr. 151:19-152:19.
[44] Tr. 53:14-54:12.
[45] Tr. 56:15-22; 115:4-116:1; Exh. 20.
[46] Tr. 57:5-58:3.
[47] Exh. 68, p. 3263; Tr. 59:7-60:9.
[48] Tr. 116:2-6.
[49] Tr. 58:21-59:3; 61:4-62:11.

In connection with their renovation project, Mr. and Mrs. Hassett made two payments to VHI, one on March 12, 2019, for $42,920 and another approximately 6 weeks later for $27,000.[50] Mr. Hassett testified that the first payment was for deposits to purchase materials for flooring, cabinets and countertops as well as roofing, among other things. The Hassetts believed the second payment was to be used to cover the costs for paving, concrete footings and other outside work.[51] After making inquiries to Vaughn, the Hassetts discovered that orders which he claimed had been placed, were in fact not yet placed.[52] While some of those orders were eventually placed (with respect to the flooring for example), it appears that Vaughn misrepresented the status of various aspects of the project. In the case of cabinetry, while Vaughn, through VHI, collected money for the materials to complete the cabinets, he never actually placed the order, despite representations that he would or had done so.[53] Mr. Vaughn also told the Hassetts that in exchange for an additional $12,000 to $24,000 which would need to be paid in a matter of days, the Hassetts could take advantage of a discount promotion with respect to the cabinets.[54] The Hassetts, however, believed that they had already paid for cabinets with their first payment.[55] Ultimately, despite paying VHI approximately $70,000, Mr. Hassert testified that very little work was actually performed and that, as of June of 2019, it appeared to the Hassetts that Vaughn and VHI ultimately had abandoned the project.[56]

## Conclusions of Law

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding as it concerns the administration of the estate, allowance of claims against the estate and constitutes a proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(A), (B), and (O)).

---

[50] Exh. 3; Tr. 163:7-11.
[51] Tr. 163:14-164:1.
[52] Exh. 72; Tr. 164:18-165:1-11.
[53] Exh. 71; Tr. 168:10-21.
[54] Tr. 167:7-25.
[55] Id.
[56] Tr. 170:9-14.

Because the Hassetts seek to hold Mr. Vaughn personally liable for the Judgment entered against VHI, which is the only way Claim 14 could be enforceable against the Debtor, this is in essence a veil piercing action. Under Virginia law, in order to pierce the corporate veil, the plaintiff must show (1) that the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally and (2) that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime. *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987); *In re Richels*, 163 B.R. 760, 763 (Bankr. E.D. Va. 1994).

To determine whether the first prong is met, courts in the Fourth Circuit look to factors including whether a single shareholder exercises undue dominion and control of the company, whether corporate formalities are observed, whether corporate records exist, whether dividends are paid and whether required officers and directors exist. *Perpetual Real Est. Servs., Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992). But in Virginia, a plaintiff must also demonstrate that the shareholder used the corporation "to disguise wrongs, obscure fraud, or conceal crime." *Id.* at 548–49.

As the Fourth Circuit observed in the *Dewitt* case,

> One fact which all the authorities consider significant in the inquiry, and particularly so in the case of the one-man or closely-held corporation, is whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking.... Other factors that are emphasized in the application of the doctrine are failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. The conclusion to disregard the corporate entity may not, however, rest on a single factor, whether undercapitalization, disregard of corporation's formalities, or what-not, but must involve a number of such factors; in addition, it must present an element of injustice or fundamental unfairness.

*DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685-87 (4th Cir. 1976).

Undercapitalization essentially means that there is insufficient unencumbered capital to reasonably meet a corporation's predictable and prospective liabilities in the event they were to arise. See *In re Criswell*, 52 B.R. at 195. *In re Powers*, No. 98-32172-T, 1999 WL 33114276, at *3 (Bankr. E.D. Va. Dec. 17, 1999).

In this case, the Court finds that the first prong of the piercing test is undoubtedly met. Debtor's counsel conceded as much during his closing argument.[57] More importantly, the evidence on that point is overwhelming. The Debtor testified that VHI had no corporate records or officers, held no meetings and had no employees. He also testified that VHI was grossly undercapitalized as demonstrated by the volume of repeated bounced checks drawn on its accounts. Virtually no corporate formalities were observed by the company. Moreover, the entity was clearly used as an alter ego for the Debtor as evidenced by his use of VHI funds to pay his personal expenses including mortgages, a club membership and student loans. Further, VHI's accounts were clearly used as an alternative bank account by the Debtor as evidenced by his testimony that when he received money from relatives and friends to support him and his family, rather than deposit the funds into his personal bank account, he put the money into VHI bank accounts instead.

With respect to the second prong, the Court finds that the Debtor used VHI to disguise wrongs. In particular, the Debtor used VHI to extract payments from clients under the guise of paying for necessary orders for their renovation projects when, instead he frequently and regularly used those funds to pay for his own personal expenses. Further, Mr. Vaughn expressly admitted on the record that notwithstanding the fact that VHI had ceased operating, he used VHI bank accounts to keep his personal funds away from creditors to which he was personally liable. In essence, Mr. Vaughn used VHI to disguise his own personal funds as corporate funds to keep them beyond the reach of his creditors. The Court finds that the Debtor's use of VHI for the foregoing purposes constitutes disguising of and perpetration of a wrong. This behavior constitutes an injustice that Mr. Vaughn perpetrated against his customers, namely Ms. Merck and the Hassetts, but also against his creditors when he placed his personal funds beyond their reach. While the Court does not find that this conduct meets the requirements for a fraudulent transfer under the Code

---

[57] Tr. 216:12-18.

(because that claim is not before the Court), the record makes clear that Mr. Vaughn was using client funds because he was unable to stay afloat with his own personal money, and that he deposited funds into the VHI accounts with the intent of shielding those funds from his personal creditors. Because Vaughn used VHI for improper purposes, he should not be protected by the corporate form.

## Conclusion

Accordingly, for the foregoing reasons, the Court will pierce the corporate veil of VHI to hold Mr. Vaughn personally liable for the Fairfax County Judgment. As a result, the Court will overrule the Debtor's objection to Claim 14.

It is therefore **ORDERED**:

A. The Debtor's Objection to Claim 14 is OVERRULED.

B. Claim 14, as amended, will be ALLOWED as filed.

C. The Clerk shall provide a copy of this Opinion and Order, or CM-ECF notice of its entry to all counsel of record in this matter.

Date: Sep 26 2024

/s/ Klinette H Kindred
Klinette H. Kindred
United States Bankruptcy Judge

Entered on Docket: September 26, 2024